IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Robert E. Tipton,

Plaintiff

v.

Norfolk Southern Railway Company,

Defendant

Case No. 3:09CV1034

ORDER

This is a case under the Federal Employers' Liability Act (FELA or Act), 45 U.S.C. §§ 51 *et seq*. Plaintiff Robert E. Tipton claims to have suffered a shoulder injury in the course of his employment with defendant Norfolk Southern Railway Co. (Norfolk Southern). Plaintiff alleges defendant was negligent for: 1) failing to inspect and maintain the derail device involved in plaintiff's injury; and 2) assigning him work while he was still injured.

Jurisdiction is proper under 28 U.S.C. § 1331.

Pending is defendant's motion for partial summary judgment as to plaintiff's derail device claim. [Doc. 21].[1] For the reasons discussed below, the motion shall be denied.

**Background**

Defendant has employed plaintiff since August, 2004, as a conductor. As part of his duties, plaintiff occasionally had to throw a "derail," a "device used to prevent unauthorized movements of a train or an unattended car from fouling a track." [Doc. 21, at 3]. Plaintiff acknowledges that he was trained to: 1) throw derails; 2) contact dispatch if he ever experienced a problem with a derail; and 3) expect frozen equipment in cold weather. He also notes that he had experienced a problem with a derail once before, albeit at a different yard, and that he had reported the problem to dispatch.

On February 4, 2007, plaintiff arrived at Bellevue, Ohio at approximately 11:00 a.m. He then transported a train to Peru, Indiana with engineer Dave Volkman. When they arrived in Peru, the main track was full, so defendant instructed them to back their train into the yard and onto a secondary track, an unusual maneuver according to plaintiff. Before doing so, plaintiff had to throw a derail, among other tasks. At 8:45 p.m., plaintiff proceeded to the West End derail with a lantern and radio.

Plaintiff then performed a visual inspection of the derail. He did not witness any snow or ice around the device, though the temperature was between three and five degrees Fahrenheit. He, however, "could clearly see that it was not lubricated." [Doc. 31-1, at 15].

Plaintiff then unsuccessfully attempted to throw the device twice. On his third attempt, plaintiff "noticed a pop" in his right shoulder when the handle broke and stopped halfway. [*Id.*,

[1] Defendant does not seek summary judgment as to plaintiff's claim that defendant assigned him work while he was injured.

at 16]. When asked why he did not contact dispatch prior to throwing the derail, plaintiff responded: "I didn't feel it was necessary [to notify dispatch] until I gave it a good enough effort." [*Id.*, at 18].

Using his left arm, plaintiff finished throwing the derail and two other switches with no further problems. After throwing the switches, he returned to the derail and operated the device without difficulty. Plaintiff stated: "It just seemed a lot easier to throw than it did before, because whatever had happened that jammed up, it was unjammed by the time I threw it." [*Id.*, at 17].

Plaintiff then went to his dorm, where he showered and took pain relievers. He then notified the Trainmaster of his injury and problems with the West End derail.

David Dize, the Peru track supervisor since 2002, went to the West End derail around 11:00 p.m., after personnel informed him of the incident. After throwing the device multiple times, he wrote in his log book: "Nothing found"; "[w]orked fine"; and "[t]hrew derail repeatedly." [Doc. 21-1, at 4]. Dize further notes that, to his knowledge, there have been no reports of problems with the West End derail prior to February 4, 2007, and that the device is thrown between five and ten times per day.

In his affidavit, Dize stated that a yard inspector, who reports directly to Dize, inspects each of the two derails located in the yard monthly. During the inspection, the inspector throws the derail and will, if necessary, lubricate the device. Any problems identified by the inspector are promptly remedied.

Dize admits that the inspection records are not available despite a two-year retention policy. The inspector, Chris Garstka, cannot recall whether he applied lubricant to the West End

derail during his mid-January, 2007, inspection. Garstka and Dize state that they are unaware whether the device was lubricated when plaintiff alleges he sustained his injury.

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact, *id.* at 323, and then the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

**Discussion**

FELA provides that employees of common carrier railroads may recover for work-related injuries caused in whole or in part by a railroad-employer's negligence. 45 U.S.C. §§ 51-60. Congress enacted FELA as a "broad remedial statute" to assist railroad employees when an employer's negligence causes injury. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561-62 (1987). FELA is a "response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work[,] and are helpless to provide adequately for their

own safety." *Sinkler v. Miss. Pac. R.R. Co.*, 356 U.S. 326, 329 (1958). I am to read the Act liberally in favor of injured railroad employees. *Urie v. Thompson*, 337 U.S. 163, 180 (1949).

To assert a *prima facie* case under FELA, a plaintiff "must prove that: 1) he was injured within the scope of his employment; 2) his employment was in furtherance of [defendant's] interstate transportation business; 3) [defendant] was negligent; and 4) [defendant's] negligence played some part in causing the injury for which he seeks compensation under FELA." *Van Gorder v. Grand Truck W. R.R., Inc.*, 509 F.3d 265, 269 (6th Cir. 2007).

The main issue here concerns element three: whether defendant acted negligently toward plaintiff. *Id.*

To prevail on this issue, plaintiff must "prove the traditional common law elements of negligence[:] duty, breach, foreseeability, and causation." *Id.*; *see also Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165-66 (2007) ("Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law.").[2]

"Under FELA, a railroad has a duty to provide its employees with a reasonably safe workplace." *Id.* The parties disagree only as to whether defendant breached its duty.

---

[2] To the extent that causation could be an issue, the Supreme Court has held that "FELA relaxes a plaintiff's standard of proof regarding causation." *Van Gorder, supra*, 509 F.3d at 269 (citing *Rogers v. Miss. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)). A plaintiff must "present more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but not much more." *Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 810 (6th Cir. 1996), *abrogated in part on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000); *see also Hardyman v. Norfork & W. Ry. Co.*, 243 F.3d 255, 258-59 (6th Cir. 2001); *Maiden v. Ind. & Ohio Ry. Co.*, 182 F. App'x 500, 503 (6th Cir. 2006) (unpublished disposition). "And no matter how slight the causal link between the employer's negligent act and the injury, recovery is allowed." *Robert v. Consol. Rail Corp.*, 832 F.2d 3, 6 (1st Cir. 1987) (citing *Tennant v. Peoria & Pekin Union Ry. Co.*, 312 U.S. 29, 64 (1943)).

Here, a jury could reasonably find that defendant's possible breach of its duty to plaintiff, see *infra*, caused plaintiff's injury.

"A railroad breaches its duty to employees when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe." *Id.* (citing *Tiller v. Atl. C.L.R. Co.*, 318 U.S. 54, 67 (1943)).

In the context of a "location-specific dangerous condition[,]" the Sixth Circuit has held: "[A] railroad's failure to cure specific dangerous conditions, including failures to remedy conditions created by winter weather, may constitute negligence." *Williams v. Grand Trunk W. R.R., Inc.*, 352 F. App'x 13, 17 (6th Cir. 2009) (unpublished disposition).

Other circuits agree. In *Kimbler v. Pittsburgh and L.E.R. Co.*, 331 F.2d 383, 385 (3d Cir. 1964), the Third Circuit held that a "railroad has no control over the vagaries of the weather or climatic conditions. But there are a number of precautions, either in the form of 'advanced protection' or 'corrective action', which the railroad could have taken."[3] The Eighth Circuit in *Chicago and North Western Railway Co. v. Rieger*, 326 F.2d 329, 333 (8th Cir. 1964), held that the "court was correct in leaving to the jury the question of whether weather conditions were a factor on the issue of the alleged negligence of the railroad."[4]

[3] This case precedes *Pehowic v. Erie Lackawanna Railroad Co*, 430 F.2d 697, 699-700 (3d Cir. 1970), where the Third Circuit established that a FELA defendant should be granted summary judgment only in "those extremely rare instances where there is a zero probability either of employee negligence or that such negligence contributed to the injury of an employee." Defendant is correct that this is not the standard in the Sixth Circuit.

[4] In arguing that I should hold to the contrary, defendant asks me to rely on the holdings of *Stover v. Norfolk and Western Railway Co.*, 455 S.E.2d 238 (Va. 1995) and *Haas v. Delaware and Hudson Railway Co.*, 2007 WL 766324 (N.D.N.Y.).

In *Stover*, *supra*, 455 S.E.2d at 244, the Virginia Supreme Court upheld a trial court's decision to set aside a jury verdict for the plaintiff because the railway did not have notice that the derail was not lubricated. In *Haas*, *supra*, 2007 WL 766324, *5, the court granted summary judgment for the railway because it also did not have notice of a defective switch that caused a worker's injury.

While weather conditions may thus speak to a defendant's negligence, defendant is correct that it "cannot be held negligent 'absent proof that such defect was known, or should or could have been known, by defendant, with [the] opportunity to correct it.'" *Williams*, *supra*, 352 F. App'x at 17 (quoting *Miller v. Cincinnati, New Orleans & Tex. Pac. Ry. Co.*, 317 F.2d 693, 695 (6th Cir. 1963)).[5] This requirement speaks, in part, to the element of foreseeability.

Plaintiff has presented no evidence demonstrating that defendant actually knew of the lack of lubrication prior to throwing the device. Plaintiff must therefore establish that defendant "should or could have [] known" about the omission, such that defendant had the "opportunity to correct it." *Miller*, *supra*, 317 F.2d at 695.

The parties agree that cold weather increases the likelihood, and therefore the foreseeability, that a derail device will fail to operate. Plaintiff's expert, James Arton, attested:

> [The] extreme cold temperature at the time of the incident (2 degrees F.) should have been cause for NSRC management to have the switches and derails at Peru, IN inspected *prior* to Tipton's arrival. NSRC management had sufficient notice of his activities, as directed by the train dispatcher at Fort Wayne, IN., to reasonably take such action. I routinely took such precautionary action, when I managed train

---

While there are some factual similarities between the instant scenario and *Stover* and *Haas*, both of those cases are distinguishable because neither involved weather as a factor. As established above, weather is a factor that a jury may reasonably consider in determining what constitutes reasonable care under the circumstances. *Williams*, *supra*, 352 F. App'x at 17; *Kimbler*, *supra*, 331 F.2d at 385; *Rieger*, *supra*, 326 F.2d at 333.

Here, defendant may have breached its duty to plaintiff in light of the cold weather, and the cold could have provided defendant with the requisite notice.

[5] Plaintiff asks me to adopt the reasoning in *Harp v. Illinois Central Gulf Railroad Co.*, 370 N.E.2d 826, 828 (Ill. App. Ct. 1977). In that case, the court held that actual or constructive notice of the condition was not required because the railroad's "active negligence" created the condition. *Id.* Here, however, plaintiff alleges that the defendant's *failure* to lubricate the derail device caused his injury. Because plaintiff claims defendant's negligence stems from an omission rather than an affirmative act, *Harp* is inapplicable.

> operations, in extreme weather conditions. NSRC taking this reasonable precaution could have prevented the injury to Tipton.

[Doc. 31-4, at 4].

In response, defendant first posits that Arton's opinion creates an "impossible standard to achieve." [Doc. 32, at 7]. Defendant, however, fails to provide anything demonstrating said impossibility beyond this contention. This is inadequate. *See Chesapeake & Ohio Ry. Co. v. Newman*, 243 F.2d 804, 808 (6th Cir. 1957) ("We find without merit the contention of the employer . . . that [it] owed no duty to keep the entire ninety acres free of snow and ice because it would be impossible to do that.").[6]

Because defendant fails to provide evidence for its contention, and also because "what constitutes reasonable care under the circumstances is ordinarily a question for the jury[,]" *Karzanoff v. U.S.*, 945 F.2d 32, 39 (2d Cir. 1991), whether defendant's omission was unreasonable here – given the cold weather – is for a jury to decide.

Defendant also argues that, even if defendant's omission was unreasonable, plaintiff did not follow Norfolk Southern's procedure of notifying the maintenance crew, who would have lubricated the derail for him, before acting.

The thrust of defendant's argument here is unclear. To the extent that defendant is arguing – or would argue – that plaintiff assumed the risk or was contributorily negligent such as to bar his recovery, those arguments fail under FELA. *See Sorrell*, *supra*, 549 U.S. at 166 ("One notable deviation from the common law [under FELA] is the abolition of the railroad's common-law defense[] of assumption of risk."); *see also id.* ("In all actions [under FELA], the fact that

[6] While *Newman* concerned the Jones Act, "[t]he Jones Act incorporates the standards of [FELA]." *Hopson v. Texaco, Inc.*, 383 U.S. 262, 263 (1966).

the employee may have been guilty of contributory negligence shall not bar recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." (citing 45 U.S.C. § 53)).

If, meanwhile, defendant merely argues that plaintiff's respective negligence may proportionately reduce his damages, defendant is correct. 45 U.S.C. § 53. The amount of diminution, however, is a question for the jury. *Id.*; *cf. Bradford v. Wurm*, 610 F. Supp. 2d 835, 846 (E.D. Mich. 2009); *Taylor v. Hannah Marine Corp.*, 2009 WL 3089181, *2 (N.D. Ohio).

"Under FELA, the 'test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part . . . in producing the injury.'" *Van Gorder*, *supra*, 509 F.3d at 269 (quoting *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 116 (1963)). The Supreme Court has also held that "depriv[ing railroad] workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them." *Bailey v. Cent. Vt. Ry.*, 319 U.S. 350, 354 (1943).

When the evidence is viewed in the light most favorable to plaintiff, a reasonable jury could determine that defendant "should or could have [] known" about the defective derail device and had the "opportunity to correct it[,]" *Miller*, *supra*, 317 F.2d at 695, had it taken the "reasonable precaution" of inspecting and lubricating the derail device prior to plaintiff's arrival, given the weather conditions [Doc. 31-4, at 4]. A jury could therefore reasonably find that defendant breached its duty to provide a reasonably safe workplace, *Van Gorder*, *supra*, 509 F.3d at 269, and that said breach was foreseeable and proximately caused plaintiff's injury.

Defendant's motion for partial summary judgment [Doc. 21] is therefore denied.

**Conclusion**

For the foregoing reasons, it is hereby:

ORDERED THAT defendant's motion for partial summary judgment [Doc. 21] be, and the same hereby is, denied.

So ordered.

s/James G. Carr
U.S. District Judge